Good morning, Your Honors. My name is Serge Soni. I represent the plaintiffs in this matter. I'd like to reserve three minutes for rebuttal, if I might. Sure. Your Honor, we're here because the district court reached two conclusions on summary judgment. One, that SSSC and UI are religious entities or have some religious involvement. And two, that the board members could have some contingent responsibilities that impacted appointment of religious authorities within the church, entity which is SDI, Sikh Dharma International. We must remember that these conclusions were reached on a summary judgment motion. And what the court ignored and failed to do was follow the well-established standards for considering summary judgment motions. It's been universally accepted that disputed facts must be viewed in a light most favorable to the non-moving party. In that case, that was the plaintiffs. The plaintiffs have brought their own motion for partial summary judgment with respect to affirmative defenses that the district court chose not to address, concluded they were moved. So we're here on the defendant's motion for summary judgment. As such, all disputed facts and inferences had to be construed in favor of the non-moving party. Before we jump into the ecclesiastical exception or the ministerial exception, just the two doctrines that the district court relied on, could you just briefly address the statute of limitations claim that's raised in the very end of the red brief? Correct. Which they argue, and it seems like a pretty credible argument, that your claims are barred by the applicable statutes of limitation. And I just would like your response to that. Certainly. It's never been the law in the United States that parties who commit wrongdoing and then conceal it can avoid consequences of the acts. In this particular case, the evidence is clear. The four members of the board that survived Yogi Bhajan at SSSC did not disclose that he had identified his successors. They continued to operate as if they were the ones with exclusive control. They did not implement the neutral principles requirement of the operating agreement in the bylaws. They concealed all of those facts. None of those facts became apparent. But it seems, unless I'm mistaken something, it sure seems like the plaintiffs knew that they had a right to be on the boards. The plaintiffs knew. And they even retained counsel at some point early on. Not with respect to this matter. Well. Let me explain, if I might. The plaintiffs knew that Yogi Bhajan, their father and BBG's husband, wanted them to serve within the organizations after his death. They were never in possession of his designation of successor trustees. They did not even know that he was required by the terms of the bylaws and operating agreement to provide that. It was provided in secret to his lawyers. It was not to be disclosed until his death. They had no means of knowing that he had fulfilled the requirements set forth in the operating agreement and the bylaws. That there was such a requirement. All they knew is he wanted them to participate. Yogi died in 2004, right? Correct. The suit wasn't filed until 2010. Correct. You've got a two-year statute on fraud. You've got a four-year statute on RICO, right? Correct. And they hired a lawyer in 2004. So if they knew enough to be on inquiry notice and they knew who the wrongdoers or alleged wrongdoers were, these other four board members, why couldn't they have filed suit in 2004, 2005 and sought discovery of these documents? They did not know that Yogi Bhajan had, in fact, designated in writing as he was required to do. Nothing outside counsel that they retained could have obtained that information. It was preserved secretly in the hands of Roy Lambert amongst the four members of the board for their own personal benefit. They hid it from the world. It only became apparent after a separate community of religious leaders challenged their attempt to sell the tea company and benefit from it themselves. Only when that case went to trial did it become clear what the terms of the bylaws and operating agreements were, that Yogi Bhajan had fulfilled his portion and the facts had been concealed. It has always been the law in the United States that substantial justice must be done and wrongdoers that try to cover up will not be shielded by the statute of limitations. Why don't you move on to the other? I'm sorry? I didn't mean to consume all your time on this. It just struck me when I read their brief that it raised an issue of concern. Nothing would have pleased us more than to know sooner what his intentions were so they could be fulfilled. We did not know. We could not know. It was held from us, and it only came out at the trial in the state court. And even that discovery was held in secret confidentially. You didn't even learn about it in the discovery process of that case? We asked for it. We were not involved in that case. We sought to intervene and were denied that opportunity. Instead, when the case finally went to trial and the evidence was put on from the witness stand and the documents were presented, that is the first time that my clients became aware that Yogi Bhajan was, in fact, true when he said that he wanted them to participate, had, in fact, done what he said he had to do, provide a written designation, and that had been subverted and concealed by his lawyer and the four members of the Board of Trustees, all for their own personal benefit. All right. So why don't you turn to the ecclesiastical doctrine or the ministerial doctrine? Which one would you choose to address first? It's very simple here. SSSC is a corporation's soul. It was created to take over Yogi Bhajan's responsibilities as caretaker and trustee of the assets of a church. Yogi Bhajan, while he was alive, maintained full religious control along with all of the other activities which were nonreligious that he pursued under SSSC. There was education. There were charitable activities. There were all kinds of things that he did. Religion was only a small piece of it. On his death, he directed that those religious responsibilities had been relegated and delegated to the Sri Siktar and Paisaiba. The SSSC remaining board was left to being a corporation's soul, responsible for management of the assets of the church only, nothing further. Well, don't they have to manage those assets, you know, in conjunction with the overall purposes of the church? No. The recognition of a corporation's soul, I apologize. I didn't mean to be harsh in my response. No, no. The whole point of a corporation's soul, created under California law, is that it is a caretaker of religious assets so that when there is a change in governance, you don't have to go change title on everything. It is a vehicle for that purpose. SDI, Sikh Dharma International, is the church, right? Sikh Dharma International is the church. Who is the sole member of SDI? UI, which is owned solely by SSSC. Okay. So the people who are on the board of SSSC and UI control the church then, right? They control the church by virtue of ownership, not by virtue of duties. The duties with respect to religious activities are exclusively within the hands of the church to be guided by a group of ministers called Khalsa Council. And who appoints the Khalsa Council? The Khalsa Council is recommended by the group of ministers and as a matter of administrative authority is installed by SSSC. All right. So if your clients, if we were to hold that your clients were entitled to become on the board of SSSC, wouldn't they in effect be able to affect the religious dogma? No. No? There would be only three or four members among a group of 15. They have no control. They have a vote with respect to installation, but that vote can only install those that have been recommended by Khalsa Council. So there's a significant difference between the process of selection and recommendation,  and the exercise of the duty to install them, which is held in SSSC. Nothing in SSSC's bylaws offering agreement gives them the right to select who should be the Sri Sikdar, only to install those that are recommended to them. Consequently, the board members had no involvements in religious activities. But I think we go back to the fundamental rule, Your Honors. It's a summary judgment motion. Whether or not SSSC and UIR religious organizations was hotly disputed between the parties. That means a district court judge, considering a summary judgment, must disregard the challenges by the defendants, must accept the testimony and the evidence presented by the plaintiff, must view the inferences in light most favorable to the plaintiff, and cannot have made this decision. It should have been reserved for the finder of fact. It was not Judge Mossman's duty or role to make those decisions in the face of disputed facts. So in your view, the finder of fact, what material facts would the jury or the judge have to find in order to rule in your favor? The board of SSSC was to be seated at the direction of Yogi Bhajan's selection. His selection had nothing to do and was not guided for religious principles. He had complete discretion. He could choose on any basis whatsoever. He did choose. You haven't answered my question yet. What would the finder of fact have to find, material facts, in order to rule in your favor on the arguments that you're asserting? A finder of fact would simply need to know. No, not need to know. What would they have to find in order to rule in your favor? Let me try and answer that directly. Please. The finder of fact would have to conclude that the selection of successors to Yogi Bhajan was in his hands and his hands alone, that he made it, that he was not guided or required to be guided by religious principles, and that the positions were not ministerial in nature. Well, aren't you now treading into the whole concerns raised by those? No, I'm not. I'm on a summary judgment motion. No, no, no. You may be on a summary judgment motion, but the whole doctrine applies at the time judgment is entered. You don't want juries making or judges making these kinds of ministerial or religious kinds of determinations in order to rule for one side or the other. What the cases teach us, what the Supreme Court has told us is that you want, is that the decision has to be based on neutral legal principles. And the neutral legal principles of those things. So let me ask you this. So when the judge has to instruct the jury on the law that the jury is supposed to apply, what are the neutral principles that the judge will instruct the jury on? The terms of the bylaws and operating agreement, which do not invoke any religious principles, that specify that Yogi Bhajan was to designate his successors, the fact that he did, in fact, designate successors, and that no one had the right to overrule that or implement a different course for establishing a succession to Yogi Bhajan. The problem is there was a settlement reached, right, in 2010 as a result of the state court lawsuit. Yes. And that established that SSSC is now the sole member of SDI, right? And pursuant to that settlement, there have been elections in, what, 2012, 2015, 2017. And if we were to rule, we would be upsetting all those elections and things. Is that right? There were illegal elections. There's no authority in the bylaws or operating agreement that allows any elections for succession of Yogi Bhajan. There is a neutral, nonreligious, non-dogmatic specification. Yogi Bhajan alone, in his sole discretion, without reference to any religious principles, was to designate who succeeds him. And he did that. The fact that a state court judgment was set aside as part of a settlement agreement between disputing warring factions of the community that then result in a series of illegal elections is not grounds to uphold them. They're still illegal. The operating agreements and bylaws were established under neutral principles. We have the benefit of plenty of decisions that recognize... I'm just wondering, how do you distinguish the Serbian Eastern Orthodox and the Milo Vukovic case? You know, that was the 1976 Supreme Court decision that established this ecclesiastical abstention doctrine. There was a question there in that case about removal of a bishop that was appointed pursuant to religious principles. This is not that case. SSSC is not a religious entity. It owns a church, but it is not itself a religious entity. The tax filing for 501c3 established it was a 501c3 organization, but not a religious organization. There's nothing in the record that says that. The district court judge was simply wrong in saying that there was an acceptance that it's a religious organization. SSSC is not a religious organization. The sole member of SSSC had the sole discretion in his independent authority to declare anybody to succeed him. He could have named a goat if he wanted to. Did SSSC or UI get to appoint one of the two key Sikh leaders? Only if he didn't, but he had. It was a contingent authority to install at the recommendation of church authorities if he failed to do what he was supposed to do. He did what he was supposed to do. But it is important that the district court made rulings on disputed facts that he should not have. Okay. I'll let you go over your time by one minute. Certainly. The same standard effectively applies in the motions to dismiss. And the 9b standards that were applied are not being applied in harmony with the Rule 8 requirements. The reality is there's ample facts, and it's in our papers. Yes, we got that. I'll give you some time for rebuttal. I'll give you a few minutes for rebuttal. Thank you. Thank you. May it please the Court, my name is Paul Southwick, and I represent Siri Singh Saab Corporation, Unto Infinity, and a number of other defendants in this matter. This case is about the right to hold leadership positions. It is not about an employment discrimination claim or an employment wage claim. Rather, it's about leadership positions that are at the very heart of the hierarchy of the Sikh Dharma religion. It's about those who would sit on the boards of the organizations that will personify the beliefs and mission of Yogi Bhajan after his passing. But opposing counsel says that the organizations outside the church are simply businesses and are not integral to the church doctrine. What's your response to that? My response to that is to look at the record, and the record reveals the undisputed corporate governance documents that applied at the time of Yogi Bhajan's death. And when we look at those, Siri Singh Saab Corporation was established as a religious nonprofit corporation, and Unto Infinity and Siri Singh Saab had the following duties, and these duties are not in dispute, and privileges. They had the right to appoint members of the Khalsa Council, as plaintiff's attorney today acknowledged. They are obligated to give reports to the Khalsa Council at its biannual meetings, and so in their capacity as board members, they report to the governing religious body. They oversee the administration and program services of Sikh Dharma International. They personify its beliefs. They carry out the mission. They are external representatives of the faith at interfaith gatherings and other interfaith activities. They have the power to appoint and remove the board members of the operating church, Sikh Dharma International. They have the power to change the very bylaws of Sikh Dharma International, which establish its mission. They also have the power to select a successor religious officer, the Siri Sikh Dar Saba, and they had the power to decide whether Yogi Bhajan, at the end of his life, was incapacitated such that the new religious leadership should take over. Now, even if some of these powers were not exercised, the fact that Yogi Bhajan gave these trustees of these boards those powers demonstrates that we're not talking about a fifth-grade teacher here. We're not talking about a coach of a religious school's athletic team. We're talking about religious leaders. Doesn't this dispute, though, all about whether Yogi Bhajan had the authority to appoint his family members to the boards? No, it's not disputed whether or not Yogi Bhajan had this authority. What do you mean it's not disputed? You mean he had the authority? Yogi Bhajan had the exclusive authority to decide who would be the successors to his office through representation on the boards. So let me ask you this. Doesn't the dispute just then boil down to whether or not he had the authority and whether or not he exercised that authority? So it's not about whether he had the authority. It is about whether he exercised the authority. Why does that have to get us into the ecclesiastical and ministerial doctrines? So we're within the church autonomy doctrine because, like the situation in the Kienfar Milojevic opinion where – Milojevic. Yeah, I also struggle with how to say that. What this circuit has done is, in its prior cases, it has been able to adjudicate secular disputes over title to both church property or even church trademark rights and intellectual property. But what it has said it cannot do, applying neutral principles or otherwise, is to second-guess or oversee a matter of religious succession. And that is something that is clear throughout the United States Supreme Court. Okay. Go ahead. Finish. Throughout the Supreme Court's jurisprudence as well as this Court's jurisprudence. Time and time again, when the Court has allowed claims like the plaintiffs to go through, it has clearly identified those plaintiffs as not holding leadership positions, as not being anointed leaders by a high religious officer, as not being successors to the administration of a religion. Let me ask you this. If the authority existed, apparently nobody disputes that, right? Right. And if there's some document that shows that he exercised that authority, why doesn't that just end the dispute? So let me illustrate it this way. Sikh Dharma – Because he says that they found out years later that, in fact, he had written out his wishes. He exercised his authority. And if that's true, why doesn't that just end the dispute? And we could go through – That's all about neutral principles, right? Just simple fact-finding. So we can walk through the neutral principles and how that would work, but before I do that, I'd like to – Since Sikh Dharma is not a well-known religion outside of the community, I'd like to compare this to more common religions that we are familiar with. If one thinks about the Catholic Church, and I know that this court does not have jurisdiction over the pope or the College of Cardinals, but let's say it did, and the pope appointed members of the College of Cardinals, and other archbishops said, oh, no, the pope told me before he died and the new pope was elected that I was going to be on the College of Cardinals, and something went wrong there, and so I'm going to file a claim before a civil court, and I'm going to ask for a civil remedy that I be appointed to the College of Cardinals and that a jury decide the true intent of the pope in making the appointments. I think we could all agree that this court and any court in the United States would never make such a determination. Even if there was a writing. Even if there was a writing. This court, because of the Constitution, has said that in certain circumstances, when we're talking about the very top leadership of a religious body, we are going to decline to provide a civil remedy that we would normally be inclined to provide in almost any other circumstance, and that is because whoever is at the top of a church and can appoint the archbishops, the bishops, down the line, has the ability, has the power, the exclusive power, to decide the future, the very future of the church. Do you dispute that... Raji... Yogi Bhajan. Yogi. Let's call him Yogi. Yogi. Y-B. Yogi. Do you dispute that he exercised his authority? There is a factual dispute over not whether he exercised his authority, but how he exercised his authority. And so here's how we can run through an exercise of neutral principles and demonstrate why it doesn't work here and why it's too invasive. So what neutral principles would require a jury to find is they would have to identify first which of the secular governing documents were in effect at the time of Yogi Bhajan's death. That's probably something that they could do. They could decide these articles of incorporation were in effect, these bylaws were in effect. Okay, we're fine there. Then they would have to read them. And when they read them, they would find that there is a very unique provision running through all of them, and that provision is that there will be no board of these organizations until Yogi Bhajan dies, and the board that will come to life upon his death or incapacity will be a list of people in a written designation that would be signed by Yogi Bhajan, dated by Yogi Bhajan, delivered to the lawyer for the church, which was Roy Lambert at the Schwabe Law Firm, and held in a vault until his death, at which time it would be revealed. Okay, we could even maybe follow that. Then a jury would have to... That seems pretty easy, right? Is there such a document? So at first glance, it might seem fairly easy, but then here's where it breaks down. There are three documents with different names. Some are dated, some are signed, some are not dated. There are also oral promises alleged by the plaintiffs that come into play here. And so what... And there was no document in the vault. Roy Lambert testified, and there's no evidence that opened the vault and there was any list. So there's no list in the vault. There are two lists floating around that didn't come to light until after his death. One has 13 names, one has 14 names, and then there's what we call the sticky note, in which some of the children's names, the plaintiffs who are the children of Yogi Bhajan, there is a note that they will be added to the board of SSSC and a purported signature by Yogi Bhajan. So a jury is going to have to decide, when Yogi Bhajan died, what were his wishes for succession to his powers? His powers over the nonprofits as well as his powers over the religion. And at this point, the jury would be making a decision that would not only affect the very structure and identity of the Sikh Dharma religion, but would also essentially be a guessing game at which cardinal did the Pope intend to place? Which member of the Quorum of the Twelve did the leader of the LDS Church intend to place on that board? And that is an area, it's a very small area, it's a very narrow area, that the court has said a secular court must abstain from allowing a jury or a judge to guess or presume the intentions of a religious leader in passing down his or her religious authority. And that is what forecloses a civil remedy in this case. Tell me this, as opposed to all this complex stuff, why does the statute of limitations not help you? You seem to rely on it, but just tacked it on at the end. Does that mean really that's not a good argument on your part? To the contrary, we believe it is a very strong argument, and we've raised this argument consistently. The reason it is at the end of our brief is that at the district court Judge Mossman did not address the argument in his opinion, granting summary judgment in our favor. And so we focused our briefing on the issues that were addressed by Judge Mossman in his orders. However, in our summary judgment briefing to Judge Mossman below, we raised the statute of limitations argument and we continue to affirm it today. And the reason being that these appointments take us back to, at the very latest, 2004. In 2004, Yogi Bhajan passed. The new religious leadership was meant to come to be. At that time, all the plaintiffs in their deposition testimony, and this is part of what makes this case different from the case that was before this court in 2016, we now have discovery. Every single plaintiff admitted at their deposition that immediately after Yogi Bhajan's passing, they all believed that they were entitled to positions on these boards. They also testified, and there's evidence in the record, that So Perk, the president, one of the defendants here, and the president of Sirisingsab Corporation, sent them a memo in which she affirmed that they would be on the boards of Sirisingsab Corporation and unto infinity, that Roy Lambert also told them, the lawyer for the corporations, told them that they were on the list of people who were going to be on the boards. So it's not disputed that they knew in 2004 or shortly thereafter, in 2005, that in their minds, based on some representations of defendants, that they were entitled to these board positions. And so then they knew that they weren't getting them. So they hired a lawyer to try to get them. And they knew that they were being denied the positions by So Perk, who had originally told them, because she sent a revised memo of understanding later in that year. They knew what was being represented to him. They testified that they believed at the time that those representations were made, that they were entitled to the seats, and when they were told a contrary representation months later, they believed that they were being lied to. At that point in time, 2005, they had everything that they needed to have to allege a fraud claim or to allege... At least they were on notice. Inquiry notice. Inquiry notice. At the very least, inquiry notice. But here we're talking about actual admissions during deposition testimony and documents provided by defendants to the plaintiffs in this case. Why do you think they waited until 2010 to file suit? There can be any number of reasons. The plaintiffs are part of the religious community. There were a lot of moving parts. At least B.B.G. remained in her religious role of the Bai Saba and continued to be part of the religious community. Honestly, some of the plaintiffs might not have wanted to serve in these roles, and there can be a myriad of reasons. It's not exactly in the record. But what we do know is they waited too long, and they waited six years, from 2004 to 2010, and by that time the statute has run and the religion has moved on. Unless the court has anything else? Thank you. Thank you.  Even a cardinal, a bishop, a priest, a driver driving children in a church van has to comply with traffic laws. They've got to stop at the red light. They've got to honor the civil law that they are subject to. SSSC is an organization formed pursuant to state law. It is a civil law that establishes that it must abide by the principles set forth in its operating agreement and in its bylaws. It hasn't done that. This is not about requiring a religious organization to change its religious decisions. This is about requiring a civil organization to comply with its civil law obligations. The Yogi Bhajan's designation was not known to the plaintiffs until 2010. It was not available for them to get inquiry notice or not. It was impossible for the plaintiffs to get that document. It was maintained in secret. If they had sued in 2004 or 2005, they could have asked for discovery. We couldn't. All that we knew is Yogi Bhajan desired that the family be on the boards. We did not have a declaration, a designation, a writing by Yogi Bhajan instructing that they were to be placed on the board. They are members of his family. They know that absent something like that, they were at the mercy of their existing board members. They asked. They were told, yes, your father intended for you to serve. We'll get you on the board in due course. They did not know that they had a right to be on that board as a matter of right, as a matter of neutral principles, applying civil law until 2010. They could not have challenged it. All the inquiry notice in the world about Yogi Bhajan's desires does not establish that he had actually done what the bylaws required or what the bylaws required in the first place. That information became available in 2010. This is not about deciding who the religious leaders were. Yogi Bhajan decided that. He designated who the Sri Sikdar is and he designated who the Bhai Saibhai is. This is about who are to be the trustees over the corporation soul managing the assets of the church. And that is established pursuant to the express neutral principles that must be applied, and the court was wrong in deciding disputed facts without favoring all credible inferences in favor of the plaintiffs. Thank you. Thank you. Thank you. The matter is submitted at this time. Thank you, counsel, for your arguments.
judges: Gilman, Paez, Rawlinson